```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF KENTUCKY
                 SOUTHERN DIVISION
                      LONDON
```

| | | |
|---|---|---|
| STAR INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-186-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHRISTOPHER SMITH and APRIL | ) | **&** |
| SMITH aka APRIL STEELE, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

April Smith,[1] then pregnant with her child B.S., was riding as a passenger in a car driven by Christopher Smith when she was injured in a one-car auto accident. That accident gave rise to this federal declaratory judgment action, as well as a parallel state court suit. Star Insurance Company filed this action seeking a declaratory judgment as to whether its coverage extends to Christopher, April, and her minor child. April's state court action includes a bad faith claim against Star Insurance and a parallel declaratory judgment action on the issue of Star's coverage. April now moves to dismiss this action for lack of subject matter jurisdiction, chiefly on the ground that this Court should decline to exercise jurisdiction under the Federal Declaratory Judgment Act. For the reasons set forth below, the Court agrees and will GRANT April's motion.

---

[1] April indicates in her motion that her legal name is "April Steele." [Def.'s Mem. in Support of Mot. to Dismiss, R. 6-1 at 1]. Star's complaint and the record, however, use the last name "Smith." For purposes of consistency with the record, the Court refers to her as "April Smith" or "April."

I

April and Christopher Smith bought a used Ford Taurus from Family Auto Sales in 2013. On December 7, 2013, they test drove and agreed to purchase the car once certain repairs were completed. On December 23, at the dealership's request, the two provided proof of insurance from State Farm covering the vehicle. [Compl., Ex. C, R. 1-3]. After the dealership agreed to file the certificate of title and other documents on their behalf, April and Christopher took possession of the car. Title was not transferred, however, until February 25, 2014 – eight days after Smith and April, then pregnant with her child B.S., were injured in an auto accident in the Taurus. [Compl., Ex. D, R. 1-4 at 4].

April, who suffered significant injuries in the accident, filed a claim for herself and her infant child for liability coverage and Basic Reparations Benefits and Personal Injury Protection benefits with Star Insurance, Family Auto Sales' insurer. According to Star, that commercial lines policy extends liability coverage to any vehicle owned by its insured. [Compl., R. 1 at ¶ 38]. After protracted and unsuccessful negotiations, April sent a "bad faith letter" to Star on August 15, which provided notice that she intended to file a bad faith action against Star if no settlement was reached before September 5. [Def.'s Mot. to Dismiss, Ex. 4, Ridings Aff., R. 6-6; *id.*, Redacted Ex. 14, R. 6-21 at 6]. Shortly after receiving this letter and before that notice period elapsed, Star filed this federal declaratory judgment action on August 27.[2] It requests declaratory relief as to whether it must defend and indemnify Christopher Smith, and whether it must cover BRB, PIP benefits, or Auto Medical Payments for April Smith and her child. [R. 1]. Resolution of those issues turns on whether Family Auto Sales owned the vehicle at the time of

---

[2] April Smith's minor child B.S. is not joined to this action.

2

the accident.

April filed a lawsuit in Laurel Circuit Court on September 4, eight days after Star filed this declaratory judgment action. [Def.'s Mot. to Dismiss, Redacted Ex. 15, State Court Verified Complaint, R. 6-22]. For herself and on behalf of her minor child, she brings a negligence claim against Christopher Smith arising from the accident, as well as a bad faith claim against Star. Her complaint also includes a parallel state declaratory judgment action regarding the same questions of Star's coverage as to April and her child. In status updates ordered by the Court, the parties indicate that this state court action and all of its claims for relief remain pending. [R. 20, 21, 22].

April now moves to dismiss Star's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), failure to state a claim under Rule 12(b)(6), and failure to join two indispensable parties under Rule 12(b)(7). [R. 6]. She also requests that this Court decline to exercise jurisdiction over this action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. [*Id.*]

II

A

As a threshold matter, the Court must determine whether it has subject matter jurisdiction over this action. *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). Invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a),[3] [Compl., R. 1 at ¶ 10], Star states that the value of the object of this litigation – its defense of Christopher Smith and the limits of

---

[3] Star also invokes jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which is discussed below.

3

liability potentially owed to April and her daughter – exceeds the requisite $75,000 amount in controversy.  *See Freeland v. Liberty Mut. Fire Ins. Co*., 632 F.3d 250, 253 (6th Cir. 2011).  April does not dispute this contention.

Diversity, however, is disputed.  April and Christopher are residents of Laurel County, Kentucky.  [Compl., R. 1 at ¶¶ 7-8].  Star's complaint states that it is "an insurance company organized under the laws of the State of Michigan with its principal place of business in Michigan."  [*Id.* at ¶ 6].  April argues that this identification is insufficient to establish diversity.  At best, she argues, this definition suggests that Star is an unincorporated entity or association, for which diversity is based on the residence of its members.

"A plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction."  *Vaughn v. Holiday Inn Cleveland Coliseum*, 56 F. App'x 249, 250 (6th Cir. 2003) (citing Fed. R. Civ. P. 8).  The Court agrees that Star's complaint does not demonstrate complete diversity on its face, since its vague self-description fails to unambiguously identify its corporate status.  *See id*; *Certain Interested Underwriter at Lloyd's of London v. Layne*, 26 F.3d 39 (6th Cir. 1994).

Notably, however, Star states in its response brief that it is not an unincorporated association, but a corporation owned by Meadowbrook Insurance Group, Inc.  [R. 7 at 7].  Facts set forth in a response to a motion to dismiss cannot amend a defective complaint. *E.g.*, *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012) (citing *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'").  Nonetheless, it is well established that a court may look to "the whole

record . . . for the purpose of curing a defective averment of citizenship." *Humphrey v. Fort Knox Transit Co.*, 58 F. Supp. 362, 363 (W.D. Ky. 1945), *aff'd sub nom. Fort Knox Transit v. Humphrey*, 151 F.2d 602 (6th Cir. 1945) (citing *Sun Printing & Publishing Ass'n v. Edwards*, 194 U.S. 377, 382 (1904)); *see Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010) (reviewing both the complaint and the record for facts indicating citizenship). The Court is satisfied that, based on the representations in Star's response, complete diversity of citizenship exists between Star, a Michigan corporation, and defendants, residents of Kentucky. The requirements of § 1332 therefore have been met.[4]

B

Having found that subject matter jurisdiction exists, the Court now must determine whether it should exercise that jurisdiction under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). Under the Declaratory Judgment Act, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). As such, the exercise of jurisdiction under the Act is not mandatory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). Rather, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton*, 515 U.S. at 282.

---

[4] Generally, the Court would permit amendment of the complaint to cure this deficiency. *E.g.*, *Vaughn*, 56 F. App'x at 250. However, in light of the Court's determination regarding its jurisdiction under the federal Declaratory Judgment Act, amendment of the complaint is not necessary.

The Sixth Circuit has identified five factors for assessing whether a court should accept jurisdiction over a declaratory judgment action when a parallel lawsuit is pending in state court:

(1) whether judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). The Court examines these factors in turn.

1

Because the first two factors are closely related, it is useful to consider them together. The first factor asks "whether the district court's judgment would settle the controversy." *Flowers*, 513 F.3d at 554. The second asks "whether a federal declaratory judgment will clarify the legal relationships presented to the district court." *Id.* at 557. In *Flowers*, the Sixth Circuit noted a split in precedent on these questions "in the context of an insurance company's suit to determine its policy liability." *Id.* at 555. According to the court, "[o]ne set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action. *Id.* at 555 (citing, e.g., *West Am. Ins. Co. v. Prewitt*, 208 Fed. App'x 393, 396 (6th Cir. 2006)). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing, e.g., *Bituminous*,

373 F.3d at 814). The distinction between these two disparate conclusions, the court explained, comes down to their facts. *Id.*

The latter category often covers cases where – as here – the declaratory judgment plaintiff is a party to the parallel state court action. *E.g.*, *Liberty Mut. Fire Ins. Co. v. Bohms*, 490 Fed. App'x 721, 725 (6th Cir. 2012); *Motorists Mut. Ins. Co. v. Thacker Memorial, Inc.*, 679 F. Supp. 2d 802 (E.D. Ky. 2010); *Hartford Cas. Ins. Co. v. Bluemile, Inc.*, 930 F. Supp. 2d 920 (S.D. Ohio 2013); *Allied Prop. & Cas. Ins. v. Menser*, 2013 WL 791535 (E.D. Mich. 2013). For instance, in *Bluemile*, the insurer filed a federal declaratory judgment action against the natural plaintiff regarding its coverage. *Bluemile*, 930 F. Supp. 2d at 923. Four days later, the natural plaintiff filed a state court negligence claim against the tortfeasor, a declaratory action on the same coverage question, and bad faith claims against the insurer. Judge Thapar noted that a declaratory judgment would, in part, clarify the legal relationship between the insurer and the insured, but it would not resolve the ultimate controversy between the two. This factor weighed towards abstention, particularly since the "more comprehensive State Court Action [which included the un-joined tortfeasor] permits a single decision maker to resolve all questions of liability and damages in their entirety, without prejudice to any party." *Id.* at 925.

Declaratory judgment from this Court would resolve whether Star's coverage extends to Christopher and April, and it would clarify the legal relationships between all of the parties in this federal action. *E.g.*, *Thacker Memorial*, 679 F. Supp. 2d at 808. However, a declaratory judgment on these discrete coverage issues would not finally settle the larger dispute between these parties. It would not establish, for instance, the priority of the two insurance policies in the state action (to which both insurers are joined). Nor would it resolve the final question of the

7


amount of liability.  Both of these questions will necessarily arise in the state court suit.  *E.g.*, *Allied Prop.*, 2013 WL 791535 at *3 (finding that this factor favored abstention because "the coverage decision would be contingent on the outcome of [a pending] state court case"); *Bluemile*, 930 F. Supp. 2d at 925 (declaratory judgment regarding duration of coverage period would not resolve amount of liability, which was pending in parallel state declaratory judgment action).   More importantly, "declaratory judgment would not settle the question[] of whether [Star] acted in bad faith" – one of the claims pending in April's state court action.  *Bohms*, 490 Fed. App'x at 725; *see also Bluemile*, 930 F. Supp. 2d 920.  Factual and legal issues beyond the scope of the insurance policy are required to answer that question.  This factor weighs against the exercise of jurisdiction.

Star points to *Nautilus Insurance Company v. Structure Builders & Riggers Machinery Moving Division, LLC*, 2010 WL 1293289 (E.D. Ky. Mar. 29, 2010), in which the court opted to exercise jurisdiction where an insurer was a party to both actions.  But a very different factual scenario prompted the *Nautilus* court to find that the case fell into the first category identified by the Sixth Circuit.  In that case, the state action was a construction contract dispute between a contractor, the owner, and an equipment lessor.  The insurer was later joined to the state suit for indemnification purposes, but the issue of its coverage was never raised in the state court.  Two years later, when the insurer filed a federal declaratory judgment action, the court determined that it could conclusively settle the coverage issue that was not being addressed in state court, thereby clarifying the legal relationships of all the parties before it.  *Id.* at *4.  It therefore accepted declaratory judgment jurisdiction.

Here, however, the declaratory relief that Star seeks overlaps with issues pending before the Laurel Circuit Court. Indeed, April seeks declaratory relief from the state court on the exact same coverage issues pending before this court. And, unlike the insurer in *Nautilus*, Star is defending a bad faith claim in the state court case. Accordingly, and notwithstanding the fact that a declaratory judgment may clarify the discrete coverage issue here, any relief this Court can provide would not resolve the larger controversies between the parties.

2

The third factor – the "race to res judicata" question – is "meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by the 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558 (citations omitted). April points to the timing of the two suits: Star filed this action eight days before April filed her state court suit. She also alleges that after she gave Star notice of her intent to file suit, Star intentionally selected a federal forum before that period elapsed.

The Sixth Circuit has cautioned that courts should be "reluctant to impute an improper motive where there is no evidence of such in the record." *Flowers*, 513 F.3d at 558 (citations omitted) ("[A] district court should not deny jurisdiction to a [declaratory judgment] plaintiff who has not 'done any more than choose the jurisdiction of a federal rather than state court, a choice given by Congress.'"). Nonetheless, this Court, as well as the Sixth Circuit in an unreported case, have found that an insurer engaged in "procedural fencing" by filing a federal declaratory judgment action shortly after a "natural plaintiff" gives notice of her intent to file a state court suit. *E.g.*, *Bohms*, 490 Fed. App'x at 725 (finding procedural fencing where natural

plaintiff gave statutorily-required 60-day notice, insurer filed in final days of that period, and natural plaintiff was forced to bring her state law bad faith claims as counter-claims in that federal action); *Bluemile*, 930 F. Supp. 2d at 926-27. For instance, in *Bluemile*, an affidavit showed that the "natural plaintiff" gave her insurer a 45-day notice of her intent to sue in the event that their ongoing coverage dispute could not be resolved. *Bluemile*, 930 F. Supp. 2d at 926-27. The insurer filed a federal declaratory judgment action three days prior to that deadline, and the plaintiff filed her state court lawsuit three days later. Judge Thapar found that the insurer's knowledge of the plaintiff's intent to sue, together with the timing of its filing, gave rise to an inference that the insurer had "intentionally engaged in procedural fencing." *Id.* at 926.

Similarly, Star filed this action on August 27, 2014, [R. 1], and April filed her state court action eight days later. [Def.'s Mot. to Dismiss, Ex. 15, Verified Compl. & Pet. for Decl. of Rights, R. 6-22]. More troubling is an affidavit from April's attorney which indicates that, like the insurer *Bluemile*, Star had advance notice that April intended to file a declaratory judgment and bad faith suit if coverage issues were not resolved through negotiation. [Def.'s Mot. to Dismiss, Ex. 4, Ridings Aff., R. 6-6 at ¶ 12, 14; *see also id.*, Ex. 14, Jay Ridings Correspondence of Aug. 15, 2014, R. 6-21 at 6]. Star's complaint was filed before that notice period elapsed. [*See id.*] These facts support an inference that Star engaged in a race to choose the forum. *Bluemile*, 930 F. Supp. 2d at 927 ("[T]he proffered evidence that [the insurer] knew it would have the opportunity to adjudicate its claims in state court [but nonetheless filed the federal action before the natural plaintiff] makes it difficult to conceive of a motive for filing the instant action other than procedural fencing."). The Court does not necessarily doubt that Star brought this federal action in good faith after independently determining that it "had no obligation to

provide coverage or defend or indemnify Christopher Smith."[5] [Pl.'s Resp. to Def.'s Mot. to Dismiss, R. 7 at 26]. However, the close timing and advance notice here, while not definitive, suggest procedural jockeying and slightly tilt this factor against the exercise of jurisdiction.

3

Perhaps the most important consideration in this case is the fourth factor: "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. Certainly, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). Nonetheless, the Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495). As such, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287 (internal quotation marks and citations omitted). The Sixth Circuit has identified three sub-factors to aid in this determination:

> (1) whether the underlying factual issues are important to an informed resolution of the case;

---

[5] Star points to *Northland Insurance Company v. Stewart Title Guaranty*, 327 F.3d 448 (6th Cir. 2003), in which the district court approved of a similar justification to find that no procedural fencing had occurred. But *Northland* is factually distinguishable. In that case, the state court action was instituted first, and the insurance company – which was not a party to the state action – sought declaratory judgment later. *Id.* at 454; *see also West Am. Ins. Co. v. Prewitt*, 208 Fed. App'x 393, 398 (6th Cir. 2006) (affirming the exercise of jurisdiction where the insurer was not a party to the parallel state action but filed the federal declaratory judgment action over a year later). Here, in contrast, Star is party to the state court suit, and this declaratory judgment action was filed *before* that suit.

> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (citing *Bituminous,* 373 F.3d at 814-15).

Star is a party to April's state court suit. Not only does that state action include bad faith claims with overlapping factual determinations – it also includes a claim for declaratory relief that turns on the same legal question confronting this Court: whether Star has a duty to indemnify, defend, and cover April, April's daughter, or Christopher. The *Flowers* Court noted that abstention may be warranted where "resolution of the issue raised in federal court [] require[s] making factual findings that might conflict with similar findings made by the state court." *Id.* at 560 (citations and internal quotation marks omitted). Such is the case here: the exact same factual and legal questions for declaratory relief are before both courts, creating a risk of inconsistent factual findings and conflicting judgments. *Bluemile*, 930 F. Supp. 2d at 927 (abstaining where the parallel state action, to which the insurer was a party, included a state declaratory judgment action on the same legal issue); *see also Menser*, 2013 WL 791535 at *4 (abstaining where both actions involved question of consent to a third-party driver for purposes of determining coverage); *cf. Envision Healthcare, Inc. v. PreferredOne Ins. Co*., 604 F.3d 983, 987 (7th Cir. 2010) (affirming abstention where the state court coercive suit involved the same indemnification question as that posed in the federal declaratory judgment action).

The state court is also in a better position to resolve the issue of indemnity. True, federal courts routinely interpret Kentucky insurance contracts. *Auto Owners Ins. Co. v. Aldridge*, 2009 WL 4782115, *4 (E.D. Ky. Dec. 7, 2009). But Star has pointed to no authority undertaking

jurisdiction to do so when a comprehensive state court action, to which the insurer is a party, is already tasked with resolving not only the same questions of declaratory relief, but also the coercive bad faith claims against the insurer. Since "another suit involving the same parties and presenting the same opportunity for ventilation of the same state law issues is pending is state court," ruling on the declaratory action presented here would amount to the "'gratuitous interference'" that the Supreme Court has cautioned against. *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495). Abstention in favor of the more comprehensive state action would avoid piecemeal litigation as well as the unnecessary and uneconomical duplication of judicial resources. *E.g. Thacker Memorial*, 679 F. Supp. 2d at 810 (noting that the state action was more comprehensive and could "save resources by combining discovery in state court"); *Bluemile*, 930 F. Supp. 2d at 925 ("[T]he more comprehensive State Court Action permits a single decision maker to resolve all questions of liability and damages in their entirety, without prejudice to any party."); *cf. Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)) (affirming *Colorado River* abstention where the state court action was more comprehensive as to both claims and parties).

      Star argues that assuming jurisdiction would not unduly interfere since the state law in question is clear. Even if the Court were prepared to accept Star's characterization of Kentucky law on this point, however, clarity of the substantive law is not determinative. In *Flowers*, the Sixth Circuit conceded that "Kentucky courts are in a better position to resolve the insurance policy interpretation in this case," despite the fact that the declaratory question before the district court was "not a novel issue of state law." *Flowers*, 513 F.3d at 561. The comprehensive and

parallel nature of the state action, together with the state court's traditional primacy on questions of state policy and insurance contract interpretation, weigh in favor of abstention in this case.

4

The final factor considers whether a "better or more effective" alternative remedy is available. *Flowers*, 513 F.3d at 562. The state court lawsuit provides precisely that: A state declaratory judgment action on the same question is already pending in Laurel Circuit Court. Star can raise the same arguments in that action and potentially obtain the same declaratory relief that it seeks here. *Accord, e.g.*, *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (declining jurisdiction because a state declaratory judgment suit in conjunction with the pending state action would be a better mechanism); *Menser*, 2013 WL 791535 at *5 (same); *Bluemile*, 930 F. Supp. 2d at 927 (same, where state declaratory action was already pending).

Star insists that this alternative cannot be "better" since it is not in the federal forum it selected. But the declaratory plaintiff's forum choice is not determinative on this Court's exercise of jurisdiction, particularly where the timing of that choice suggests a "race for res judicata." Star has not presented, and the Court is not aware of, any "reason to suppose that the alternate remedies available in state court would not adequately protect [Star's] interests." *Bluemile*, 930 F. Supp. 2d at 927 (quoting *Bituminous*, 373 F.3d at 816); *see also Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986) ("We also question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner."). In fact, Kentucky courts, as has been noted, are "in a better position to resolve [] insurance policy interpretation[s]." *Flowers*, 513 F.3d at 561.

Moreover, the *Flowers* Court noted that a state declaratory judgment action can be a better alternative where the state court is "able to combine the [coercive and declaratory judgment] actions so that all issues could be resolved by the same judge." *Id.* at 562; *see also Thacker Memorial*, 679 F. Supp. 2d at 810 (holding that a state court declaratory judgment action would be better and more effective because it could resolve all of the issues comprehensively and more efficiently). Such is the case here. The already-pending state court declaratory action protects the rights of all the parties – including April's minor daughter B.S., currently a non-party to this action – and provides for a more comprehensive remedy. This factor also weighs against the exercise of jurisdiction.

Because the weight of these factors favors abstention, the Court declines to exercise jurisdiction over this declaratory judgment action. Accordingly, the Court does not reach the other grounds for relief argued in April's motion to dismiss.

### III

Accordingly, for the foregoing reasons, it is hereby **ORDERED** as follows:

1. Defendant April Smith's Motion to Dismiss and Decline Jurisdiction under the Federal Declaratory Judgment Act [R. 6] is **GRANTED**;

2. The Court, in its discretion, declines to exercise jurisdiction over this matter pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and this action is **DISMISSED without prejudice.**

3. April Smith's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Motion for a More Definite Statement, and Motion to Dismiss for Failure to State a Claim [R. 6] are therefore **DENIED as moot.**

This the 11th day of June, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge